# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3004 | **DATE** | 3/15/2004 |
| **CASE TITLE** | U.S. ex rel. Lovett v. McAdory | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner Lovett's Petition for a Writ of *Habeas Corpus* (doc. # 1-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Eugene McAdory, the warden of the Menard Correctional Center, is hereby substituted as the respondent. After careful consideration of the entire record, Petitioner Lovett's § 2254 petition for a writ of *habeas corpus* [1-1] is DENIED. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 1 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 14 |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ⲣ︁⸝⸝⸝⸝ )

MAR 1 6 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. HENRY LOVETT, | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | 99 C 3004 |
| | ) | |
| EUGENE McADORY,[1] | ) | Judge William J. Hibbler |
|     Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Henry Lovett's *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is before the Court. For the following reasons, Lovett's petition is DENIED.

## I.    Background

### A.    Facts

The Court will presume that the state court's factual determinations are correct for the purposes of *habeas* review as Lovett has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court thus adopts the state court's recitation of the relevant facts.

On April 26, 1992, Kristen Ponquinette's bound body was found floating in the Cal Saq River. The Illinois State Police investigated and learned that Ponquinette had been bound and beaten before she was taken to an abandoned railroad bridge over the Cal Saq River which was known as

---

[1] Lovett's petition named James Chrans, the former warden of the now defunct Joliet Correctional Center, as the respondent. Lovett is currently incarcerated at the Menard Correctional Center. *See* Rule 2 (a) of the Rules Governing *Habeas Corpus* 28 U.S.C. § 2254 Cases. Accordingly, Eugene McAdory, the warden of that facility, is hereby substituted as the respondent. *See* Fed. R. Civ. P. 25 (d)(1).

14

the "Black Bridge." Several people, including Lovett, were at the bridge when Ponquinette was still alive.

After Ponquinette's body was recovered, Officer James Turner questioned Lovett and others about their involvement in her death. Initially, Lovett denied any involvement. About 20 or 30 minutes later, he admitted that he was at the "Black Bridge" on the day of Ponquinette's death but stated that she was alive when he left. Lovett subsequently gave a handwritten confession to Assistant State's Attorney Michael Baumel. The statement said that Lovett was a member of the Blackstone gang. On April 26, 1992, he went with a fellow gang member to the "Black Bridge" to help with some "gang business." When they arrived, they saw several other gang members beating Ponquinette with bricks and a cane. Lovett and the others argued about the best way to kill her. Lovett said he expressed a desire to let Ponquinette go, but a fellow gang member told him she would go to the police and that "the same might happen" to him. Lovett helped drag a sewer cover to the edge of the bridge. Two other gang members tied the cover to Ponquinette and pushed her off the bridge into the river.

## B.    Procedural History

Following a jury trial in the Circuit Court of Cook County, Lovett was convicted of first degree murder and aggravated kidnapping. He was subsequently sentenced to an extended prison term of 100 years for murder, to be served consecutively with a five-year term for aggravated kidnapping. Lovett appealed to the Illinois Appellate Court, which affirmed his conviction and sentence ("direct appeal").

Lovett then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court. In his PLA, he raised three issues, all of which he also raised at the trial and appellate levels: (1) the

trial court erred when it granted the State's motion *in limine* to prohibit Lovett from questioning

Officer Turner about the fact that Lovett initially denied being involved in the murder; (2) during

closing arguments, the prosecutor improperly referred to Lovett's failure to testify at trial; and (3)

the trial court erred when it refused to give a jury instruction on the defense of compulsion. The

Illinois Supreme Court denied the PLA.

Lovett subsequently filed a petition for state post-conviction relief. The Circuit Court denied

the petition as untimely, frivolous, and patently meritless. Lovett appealed to the Illinois Appellate

Court, which denied relief ("collateral appeal"). Lovett did not file a PLA. He then filed a timely

§ 2254 petition raising the three arguments presented to the Illinois Supreme Court on direct appeal

plus the claim that his trial counsel was ineffective.

## II.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner is not entitled

to a writ of *habeas corpus* unless the challenged state court decision is either "contrary to" or "an

unreasonable application of" clearly established federal law as determined by the United States

Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In

*Williams,* the Supreme Court held that a state court's decision is "contrary to" clearly established

Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court

on a question of law" or "if the state court confronts facts that are materially indistinguishable from

a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a *habeas* petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of

Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable.

*See Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002). *See also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if it is one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

## III. Discussion

### A. Exhaustion and Procedural Default

Before this Court may reach the merits of Lovett's federal *habeas* claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig,* 294 F.3d 907, 914-15 (7th Cir. 2002). To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel,* 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Lovett has exhausted his state court remedies because he filed a PLA after his direct appeal, and the time has long passed for him to do so in his collateral appeal.

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey,* 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel,* 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate

state procedural requirement. *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

Nevertheless, the Court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or if he establishes that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 1.    Ineffective Assistance of Trial Counsel

In Lovett's § 2254 petition, he contends that his trial counsel was ineffective. A defendant must present his constitutional claims to the state trial, appellate, and highest courts to avoid procedural default. *Boerckel*, 526 U.S. at 845. Thus, claims that are not included in a petitioner's PLA are procedurally barred. *Id.* After carefully examining Lovett's PLA, the Court finds that Lovett did not properly present his ineffective assistance claims to the Illinois courts, up to and including the Illinois Supreme Court. Therefore, this Court cannot consider these claims on the merits. *See id.* at 848 (petitioner must give state court full and fair opportunity to resolve federal constitutional claims before federal *habeas* court can review claim).

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Although Lovett does not contend that cause and

prejudice or the fundamental miscarriage of justice exceptions excuse his default (indeed, none of the parties even mention procedural default), the Court will nevertheless consider whether they can give Lovett any succor.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Lovett simply did not raise his ineffective assistance of counsel arguments. Nothing in the record before the Court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default. Moreover, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998). Thus, neither cause nor prejudice exists.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger*, 301 F.3d at 767, *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.* Lovett's petition, as well as the state court pleadings submitted to the Court, do not contain any substantiated allegations of actual innocence. Thus, this exception does not apply.

### 2. Prosecutorial Misconduct

During closing arguments, the prosecutor stated that: (1) no evidence showed that Lovett was not one of the people who pushed the victim off the bridge; (2) no evidence showed that Lovett did not know that the victim was alive when she was pushed off the bridge; and (3) no evidence showed that Lovett left the crime scene before the murder. Lovett contended that these comments violated his right to a fair trial because he is the only person who could have contradicted the evidence

supporting the State's case. He also contends that the comments impermissibly highlighted the fact that he elected not to testify.

The Illinois Appellate Court found that Lovett had waived this issue by failing to object at trial and failing to include it in a post-trial motion. Alternatively, it found that the comments were proper because a prosecutor may "compare the testimony of its own witnesses with the lack of contradictory evidence from the defense." In his § 2254 petition, Lovett again challenges the propriety of the prosecutor's remarks. In response, the respondent contends that Lovett waived this issue because the state court found that he had failed to properly preserve it. "[F]ederal courts on *habeas corpus* review of state prisoner claims, . . . will presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman*, 501 U.S. at 734-735 (internal citations omitted). Although the Illinois Appellate Court presented its waiver finding as an independent and adequate state ground ("First, defendant waived this issue . . .; Second, even if we were to address the merits . . ."), this Court later will also address the claim on the merits in case the Appellate Court's discussion of the merits is found to be interwoven with its state procedural grounds for decision.

### B.    Exculpatory Statements

The State filed a motion *in limine* seeking to prevent Lovett from questioning Officer Turner about the fact that Lovett initially denied that he was involved in the murder. The trial court granted the motion. Lovett contends that his inability to fully question Officer Turner made the jury think he had only made inculpating statements and thus forced him to "suffer the prejudicial effect or waive his right not to testify."

On appeal, the Illinois Appellate Court rejected this argument, explaining that:

> Defendant's contention on this issue is without merit. As the trial court noted, a statement made by a defendant when he is in custody and which is offered in his favor is not an admission and therefore is subject to an objection on hearsay grounds. *People v. Hudson*, 198 Ill. App. 3d 915 (1990); *People v. Pasch*, 152 Ill.2d 133 (1992). Moreover, contrary to the defendant's contentions, the completeness doctrine does not require the admission of these previous oral statements to Turner in order to fully explain defendant's written confession to ASA Baumel. *People v. Hudson.* Because Turner did not testify as to his oral conversations with the defendant, defendant was not entitled to the admission of portions of that conversation. Finally, defendant's exculpatory statements to Turner after his arrest hardly presents a situation where the circumstances were sufficient to provide indicia of reliability. *See Chambers v. Mississippi*, 410 U.S. 284 (1973).

*People v. Lovett*, No. 1-94-0789 (Ill. App. Ct. Jul. 5, 1996) (unpublished order).

*Habeas* relief based on an allegedly erroneous state court evidentiary ruling is appropriate only if the ruling prevented the defendant from receiving a fundamentally fair trial. *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir. 1989). A defendant does not receive a fundamentally fair trial if the challenged rulings "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). To determine if a trial was fundamentally fair, the court must balance Lovett's rights under the Sixth and Fourteenth Amendments to present evidence in his own defense and the state's interest in regulating the presentation of evidence in its courts. *Johnson v. Chrans*, 844 F.2d 482, 484 (7th Cir. 1988).

In his petition, Lovett contends that he should have been permitted to introduce his initial statement denying any involvement in the murder. His logic appears to be that if the jury had two competing statements to choose from (his initial denial and his subsequent confession), it might have chosen the exculpating statement, and the failure to present the jury with the exculpatory statement created the impression that he had consistently inculpated himself. Lovett, however, points to no United States Supreme Court case which supports his contention that the trial court's evidentiary

ruling deprived him of a fair trial. He also does not attack the state courts' application of the law to the facts.

Therefore, the state court's exclusion of Lovett's initial statement denying involvement in the events at the "Black Bridge" on April 26, 1992, does not warrant *habeas* relief. First, Lovett's right under the Sixth and Fourteenth Amendments to present evidence in his own defense is not insuperable. The extremely limited probative value of the statement is clearly outweighed by Illinois' strong interest in regulating the presentation of evidence in its courts. Second, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983).

Third, the exclusion of the statement does not rise to the level of a due process violation infecting Lovett's trial because, as the state court noted, the fact that Lovett denied involvement when he was arrested does not carry any "persuasive assurances of trustworthiness." *Chambers*, 410 U.S. at 302. Finally, the exclusion of the statement did not violate Lovett's right to present a defense because it was not critical to his defense. *Id.* at 298-301. Lovett may have hoped that it would have helped him, but its limited probative value, when weighed with all of the other evidence adduced at trial, means it did not prevent him from presenting a defense. Accordingly, the Court finds that the exclusion of the statement did not prevent Lovett from receiving a fundamentally fair trial.

### C.    Prosecutorial Misconduct

As explained above, this Court will also address Lovett's prosecutorial misconduct claim on the merits in case the Appellate Court's discussion of the merits is found to be interwoven with its state procedural grounds for decision. "[T]he Fifth Amendment . . . in its bearing on the States by reason of the Fourteenth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380

U.S. 609, 615 (1965). The Supreme Court, however, has not addressed a prosecutor's indirect references to a defendant's failure to testify. *Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997). This is problematic for Lovett as "[a] petitioner must have a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal." *Id.* at 106-07. The Illinois Appellate Court, by contrast, relied on state court precedent holding that the State *may* "compare the testimony of its own witnesses with the lack of contradictory evidence from the defense."

The Seventh Circuit has expressly held that Illinois' rule is not "contrary to" or "an unreasonable application of" Supreme Court precedent even though it does not track *Griffin* because it addresses indirect references about a defendant's failure to testify, and *Griffin* prohibits only direct references. *Yancey*, 113 F.3d at 107; *Freeman v. Lane*, 962 F.2d 1252, 1260 (7th Cir. 1992) ("Comments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence . . . have not been the subject of direct Supreme Court guidance"). Because *Griffin* does not apply to indirect references to a defendant's decision not to take the stand, the Illinois Appellate Court's ruling regarding the indirect references cannot be contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See Yancey*, 113 F.3d at 107.

## D.     Jury Instructions

Lastly, Lovett asked the trial court to give the jury an instruction on the defense of compulsion based on his age and his confession. Specifically, Lovett argued that because he was seventeen at the time of the murder, the Illinois statute prohibiting the use of the compulsion defense for the crime of murder, 720 ILCS § 5/7-11(a), was inapplicable. Lovett also contended that the compulsion defense was available to him because when he confessed, he stated that he expressed

a desire to let Ponquinette go and that he only went along with the others when a fellow gang member told him that if they let her go, "the same might happen" to him.

The Illinois Appellate Court rejected both of these claims on the merits. Relying on Illinois law, it held that even when a defendant is a minor, a defendant charged with murder is not entitled to raise the defense of compulsion. With respect to the aggravated kidnapping charge, the court, again citing Illinois law, held that the defense was not available because Lovett had ample opportunities to withdraw from the enterprise but failed to do so. Lastly, the court held that under Illinois law, the compulsion defense would not have applied because the alleged threat was vague, and Lovett was not directed to engage in the specific actions he took to participate in the murder.

Lovett's compulsion defense rests entirely on state law. Moreover, Lovett does not contend that the state court rulings are at odds with any United States Supreme Court authority. His request for federal *habeas* relief based on the lack of a compulsion instruction is, therefore, doomed as this Court may only address the merits of claims based on "alleged violations of the federal constitution, laws and treaties." *Biskup v. McCaughtry*, 20 F.3d 245, 247 (7th Cir. 1994) ("§ 2254 cannot be invoked simply . . . to review alleged violations of state law").

## III.    Conclusion

For the above reasons, Lovett's § 2254 petition [1-1] is DENIED.


IT IS SO ORDERED.


_____3/15/04_____
Dated

_____
Judge William J. Hibbler
United States District Court